Fantauzzi, Demandante y Apelante. *v.* Vázquez et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Guayama en causa sobre cobro de dinero.

No. 1201.—Resuelto en julio 8, 1915.

Habiendo el deudor principal dejado de verificar el pago de un pagaré vencido, fué requerido de pago el fiador, quien contestó que su fiado tenía bienes suficientes con qué responder del importe de dicho pagaré y que estos bienes ya estaban embargados, constando archivada en la corte de distrito una relación de los mismos. Dicho embargo se practicó en una acción seguida por el referido fiador contra el deudor principal para garantizarse contra la insolvencia de dicho deudor, y cuyos bienes también habían sido embargados por otro acreedor. El acreedor estableció una acción contra el fiador para hacer efectivo el pagaré, habiendo la corte inferior desestimado

la demanda sin perjuicio del derecho del demandante para establecer otra acción una vez agotados sus recursos contra el deudor principal por la excusión de sus bienes, siendo la teoría que un acreedor debe reducir a efectivo cualesquiera bienes del deudor aun cuando dichos bienes ya estén sujetos a embargo. *Se resolvió:*

NEGLIGENCIA—BIENES REALIZABLES DEL DEUDOR.—El estatuto solamente hace responsable por negligencia al acreedor después que el fiador ha indicado los bienes realizables del deudor.

BIENES REALIZABLES—EMBARGO Y EJECUCIÓN.—Al referirse la Legislatura a los bienes realizables *"which can be sold,"* evidentemente quiso referirse a los bienes susceptibles de embargo y de venta bajo ejecución.

EMBARGO Y EJECUCIÓN—(LEVY)—POSESIÓN MATERIAL O SOBREENTENDIDA DE LOS BIENES—PRODUCTO DE LA VENTA BAJO EJECUCIÓN.—Un embargo (*levy*) significa que el márshal debe estar en condiciones de tomar posesión material o sobreentendida de los bienes, y cuando un segundo mandamiento de ejecución le es entregado, él no debe embargar los mismos bienes, sino retener lo que queda del producto de la venta por virtud del primer mandamiento para cumplimentar el segundo.

BIENES EN CUSTODIA LEGIS—BIENES REALIZABLES.—Un acreedor no está obligado a proceder contra bienes que ya se encuentran en *custodia legis,* entendiéndose por bienes realizables los que pueden ser embargados directamente y no aquellos bienes respecto a los cuales tendría que litigar el acreedor.

ESTOPPEL—EMBARGO.—El acto ejecutado por el fiador al embargar los bienes del deudor principal antes de haber establecido su acción el acreedor, da lugar a un *estoppel* en equidad, que obstaculiza al acreedor para hacer un nuevo embargo.

FIADOR—REEMBOLSO—EMBARGO.—Si tienen algún valor los bienes embargados, el fiador se encuentra en situación de poder ser reembolsado hasta cuanto alcancen dichos bienes, por cualquier pago que tenga que hacer al acreedor, pues si el acreedor pudiera vender los mismos bienes, sería el fiador responsable por cualquier saldo de la deuda que no quedara cubierto con el producto de la venta.

ID.—BENEFICIO DE EXCUSIÓN—SEÑALAMIENTO DE BIENES—Cuando el fiador es requerido al pago de la deuda contraída por su principal, es su deber señalar directamente los bienes sobre los cuales el acreedor podría hacer efectiva su reclamación. La mera indicación de la existencia de tales bienes, basada en documentos, pleitos o archivos de una corte, es insuficiente.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José C. Ramos.*

Abogado de los apelados: *Sr. Rafael Martínez Nadal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

En junio 27 de 1913, J. A. Bruno suscribió un pagaré a favor de Antonio Fantauzzi por la suma de $6,651.33. Edgardo Vázquez se constituyó en fiador de Bruno y Manuel González en fiador de dicho Vázquez.

Al vencimiento del pagaré se exigió al deudor principal que satisficiera su importe y el mencionado Fantauzzi en la fecha o antes del vencimiento del referido pagaré, dió conocimiento a Vázquez de que el indicado pagaré estaba para vencer. No habiendo obtenido contestación de Vázquez, algunas semanas después Fantauzzi por conducto de su abogado solicitó de Vázquez el pago de dicho pagaré. Aparentemente y en contestación al último requerimiento de Fantauzzi, escribió Vázquez la siguiente carta:

*"Guayama, P. R., febrero 27 de 1914.*
*"Sr. Don Antonio Fantauzzi,*
*"Arroyo, P. R.*

"Distinguido Sr. y Amigo: En contestación a su carta referente al pagaré de mi fiado Don José Antonio Bruno y en la que me requiere Ud. al pago, debo participarle que dicho Sr. Bruno tiene bienes suficientes para responder de la suma del importe del mencionado pagaré con los intereses, y ya están embargados y constan en la relación que está archivada en la secretaría de la corte de distrito de esta ciudad.

"Esperando se sirva Ud. indicarme su resolución, quedo su affmo. amigo y S. S.,

"(Firmado)    *Edgardo Vázquez.*"

En febrero 27, 1914, estableció Fantauzzi la presente acción contra Edgardo Vázquez Aguilar y Manuel González. La corte dictó sentencia en contra del demandante.

Apareció del juicio que la referencia que se hacía en la carta de febrero 27, 1914, a un embargo, era a una acción y embargo establecido por Vázquez contra Bruno, sobre garantía de Vázquez contra la insolvencia de dicho deudor, y que en la referida acción fueron embargados ciertos bienes que se alegó pertenecían a Bruno.

Una de las primeras cuestiones que se presenta en el caso es la de si era suficiente la contestación de Vázquez, alegando el apelante que si el demandado deseaba ampararse en el artículo 1733 del Código Civil, que más adelante citaremos, debió haber indicado específicamente cuáles eran los bienes

contra los que el acreedor Fantauzzi debería proceder en primer término. Se alega en la contestación como materia especial de defensa, que antes de haberse establecido la acción en este caso, Vázquez escribió al apelante acusándole bienes realizables de dicho deudor Bruno, y entonces se procedía a especificar en la contestación cuáles eran los bienes a que se había hecho referencia. En otras palabras, se dice en la contestación que el susodicho Vázquez había ya indicado a dicho Fantauzzi cuáles eran los bienes del deudor Bruno que podían ser obtenidos. La carta a que alude la contestación, según apareció de la prueba, fué la que hemos transcrito, pero de la faz de la contestación constaba completamente que el mencionado Vázquez había estado escribiendo a Fantauzzi indicándole dichos bienes realizables.

En verdad que las pretensiones del apelante tendrían que prevalecer si el apelado confiaba en una relación detallada en la contestación por referencia directa, pero como hemos visto, el apelado se fundaba en la especificación hecha en una carta anterior al pleito. No se hizo ninguna petición en la corte inferior para que se hiciera un *bill of particulars* o se mostrara la carta que fué escrita con anterioridad al juicio, y por tanto debe considerarse que la contestación es suficiente.

La sentencia de la corte inferior desestimó la demanda sin perjuicio de los derechos del demandante de presentar su acción de nuevo contra los demandados una vez agotados sus recursos contra el deudor principal y de efectuada la excusión de sus bienes. La teoría tanto de la corte como del apelado es que un acreedor debe reducir a efectivo cualesquiera bienes del deudor aun cuando dichos bienes ya hayan sido embargados.

En este caso los bienes no solamente estaban embargados por Vázquez, sino que desde antes de haberse establecido esta acción por el demandante, habían sido embargados por otro acreedor. Alegó el apelado que el apelante fué negligente en no haber embargado más prontamente los bienes del deu-

dor. En este caso, sin embargo, el pagaré venció en 31 de diciembre de 1913. El apelado no notificó a dicho apelante respecto a los bienes realizables hasta febrero 27, 1914, no obstante haber sido requerido previamente para el pago, y esta acción fué iniciada en febrero 27, 1914.

El artículo 1734 del Código Civil solamente hace responsable de negligencia al acreedor después que el fiador ha indicado los bienes realizables del deudor, de manera que en este caso toda cuestión de negligencia del acreedor se regiría por las reglas comunes de la ley, y tal vez únicamente por la misma ley de prescripción.

La cuestión principal en este caso es sobre qué es lo que debe considerarse como bienes realizables. Los artículos del Código aplicables a la cuestión, son los siguientes:

"Artículo 1731.—El fiador no puede ser compelido a pagar al acreedor sin hacerse antes excusión de todos los bienes del deudor.

"Artículo 1732.—La excusión no tiene lugar:

"1. Cuando el fiador haya renunciado expresamente a ella.

"2. Cuando se haya obligado solidariamente.

"3. En el caso de quiebra o concurso del deudor.

"4. Cuando éste no pueda ser demandado judicialmente dentro de Puerto Rico.

"Artículo 1733.—Para que el fiador pueda aprovecharse del beneficio de la excusión, debe oponerlo al acreedor luego que éste le requiera para el pago, y señalarle bienes del deudor realizables dentro de la Isla de Puerto Rico, que sean suficientes para cubrir el importe de la deuda."

El apelado confiesa francamente que no puede hallar ningún precepto terminante de la ley que determine el límite del derecho que tiene el acreedor, pero alega que el acreedor debe agotar todos los bienes del deudor aun hasta el punto de pedir la rescisión de una enajenación fraudulenta hecha por dicho deudor, y cita del tomo 12 de Manresa, 253, y la sentencia del Tribunal Supremo de España de 2 de marzo de 1891. De igual modo tampoco hemos podido encontrar ninguna definición de qué es lo que se quiere expresar al hablarse de bienes realizables del deudor. Expresa, sin em-

bargo, Sánchez Román, que el fiador puede no tener el beneficio de excusión, entre otras cosas, si es un hecho notorio que el deudor no tiene bienes con que cumplir la obligación, o si hubiera sido difícil recobrar estableciendo la acción contra el deudor. 4 Sánchez Román, Derecho Civil, 919.

Consideramos como hecho probable que la idea que tuvo primeramente en cuenta el artículo 1733, al hablar de bienes realizables, fué la de los bienes inmuebles o muebles que podían ser inmediatamente embargados. La versión española emplea la palabra "realizable," y la inglesa usa la palabra "*sold,*" pero como también en el texto inglés se habla del "*benefit of levy,*" resulta, pues, evidente que la idea de la legislatura, según lo revela la edición inglesa del Código, fué la de que los bienes mencionados eran bienes que podían ser vendidos después de embargados. "*A levy*" puede significar varias cosas, pero siempre quiere decir que el márshal o alguacil debe estar en condiciones de tomar posesión material o sobreentendida de la cosa que se le ordena que venda o embargue. Generalmente no puede un márshal tomar posesión de efectos que ya están sujetos a un "*levy.*" Cuando se le entrega al márshal un segundo mandamiento para proceder a un embargo y ejecución si se han vendido los efectos por virtud del primer embargo o ejecución, él retiene lo que quede del producto de la venta para satisfacer la segunda ejecución o embargo.

El apelado ha citado en su alegato el artículo 3051 del Código Civil de Louisiana y también ha hecho cita del caso de *Gaillard* v. *Bordelon,* 35.La. Ann., 390. Este fué un caso de acuerdo con una ley especial relativa a administración.

Es bastante curioso que en el mismo tomo de decisiones y en la página 814, aparece el caso de *Folger* v. *Palmer,* en el que la corte de Louisiana declara que un acreedor por sentencia no está obligado a embargar los bienes gravados que le han sido señalados antes de establecerse un procedimiento contra el fiador en la fianza para la apelación cuando la tentativa de venta únicamente resultaría en costas. Sea eso

como fuere, el artículo 3047 del Código Civil de Louisiana se expresa en los términos siguientes:

"El fiador que solicita la excusión está obligado a señalar al acreedor los bienes del deudor principal, y prestar una fianza para que se lleve a efecto la excusión.

"No debe señalar los bienes del deudor principal radicados fuera del Estado, ni los que estén en litigio ni hipotecados por deuda y no continúen en posesión del deudor."

Por consiguiente, llegamos a la conclusión de que aunque no podemos determinar cuáles son todas las gestiones que debe hacer el acreedor, estamos, sin embargo,. enteramente satisfechos de que dicho acreedor no está obligado a proceder contra los bienes que ya están bajo custodia legal debido a los embargos hechos por diferentes personas. Nos inclinamos a creer que "bienes realizables" debe significar los bienes que pueden ser embargados y vendidos directamente y no aquellos bienes respecto a los cuales el acreedor tendría que litigar contra otras reclamaciones que ya se han hecho.

Opinamos, además, que en este caso los actos del apelado han dado lugar a un "estoppel" en equidad. Aun antes de haberse entablado esta acción contra él, había embargado los bienes del demandado Bruno. No solamente fué el acto del fiador un obstáculo para hacerse el embargo por el acreedor Fantauzzi, sino que somos también de opinión de que si los bienes en cuestión tienen algún valor, dicho fiador, apelado en este caso, se ha puesto en condición de poder ser reembolsado en lo que puedan alcanzar dichos bienes por cualquier pago que tenga que hacer al demandante. Si en este caso el demandante embargara los mismos bienes, los vendiera y obtuviera cierta suma por ellos, todavía sería responsable el apelado por el saldo, de modo que si paga toda la deuda él mismo puede hacer que se le pague lo que tiene que pagar debido a la imposibilidad del apelante para proceder contra los mismos bienes.

También somos de parecer de que el artículo 1733 del Código Civil impone al fiador un deber con el cual no se cum-

plió en este caso. De acuerdo con ese artículo está en el deber, al ser requerido al pago de la deuda del deudor principal, de señalar los bienes con los cuales el acreedor puede cubrir su deuda. La carta de 27 de febrero, 1914, no detallaba bienes a excepción de la referencia que se hacía en ella a un documento archivado en la corte. Entendemos que al expresar el artículo 1733 que deben señalarse bienes, quiere decir que el señalamiento debe hacerse directamente y no mediante referencia a algún otro documento o pleito. La cuestión es análoga a la del caso de *Méndez* v. *Celis et al.*, 20 D. P. R., 527. Cuando la ley impone a una persona el deber de señalar ciertos bienes, para que pueda evitarse o demorarse el pago debe cumplirse estrictamente con ese deber. Incumbe al fiador la obligación de indicar los bienes que han de ser embargados. Creemos que en este caso el fiador dejó de cumplir con la ley.

El demandado González no compareció en la corte inferior.

Debe revocarse la sentencia con instrucciones de que se anote la rebeldía del demandado González y dictarse entonces sentencia a favor del demandante, en contra del demandado Edgardo Vázquez Aguilar, y de no verificar éste el pago, contra el demandado Manuel González.

> *Revocada la sentencia apelada y desestimada*
> *la apelación contra la negación de nuevo*
> *juicio por ser su consideración innecesaria.*

Jueces concurrentes: Sres. Asociados del Toro, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no intervino.